Robert LARK, Jr., Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A02–0011–CR–723.

Court of Appeals of Indiana.

Oct. 2, 2001.

Richard Walker, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

FRIEDLANDER, Judge.

Robert Lark, Jr. appeals his convictions of two counts of Resisting Law Enforcement,[1] both class D felonies, Driving While Suspended,[2] a class A misdemeanor, Possession of Marijuana,[3] a class A misdemeanor, and Resisting Law Enforcement,[4] a class A misdemeanor. Lark presents the following restated issue for review: Did the trial court err in denying Lark's motion to suppress evidence?

We affirm.

The facts favorable to the judgment of conviction are as follows. At approximately 2:00 a.m. on August 3, 1997, Officers Times Gremes and John Branson of the Anderson Police Department were on patrol in Anderson when they observed Lark's car stopped in the middle of the street. As the officers approached southbound in their vehicle from behind Lark, they saw a man leaning into the window on the passenger's side of Lark's vehicle. At the same time, another vehicle approaching from the opposite, or northbound, direction was waiting for Lark to move because his car was parked in such a way that traffic could not pass from either direction. The unidentified man walked away from Lark's car when he saw the police car approaching. By this time, Lark's stopped car impeded the movement of both the police car and the aforementioned northbound vehicle. Initially, Lark's vehicle did not move after the unidentified man left. Officer Branson decided to initiate a traffic stop for blocking traffic. Before he could do so, however, Lark drove away. By that time, according to Officer Branson's observation, Lark's vehicle had been stopped in the middle of the street for at least fifteen seconds.

Officers Branson and Gremes followed Lark for several blocks and then executed a traffic stop. As Officer Branson approached Lark's vehicle, he smelled a "very strong odor of burnt marijuana." *Record* at 139. When Officer Branson asked to see Lark's driver's license, Lark responded that he did not have one. Officer Branson directed Lark to get out of his vehicle. After Lark complied, Officer Branson performed a pat-down search of Lark's person. During the search, Lark acted "real nervous" and "real tentative." *Record* at 144. After the pat-down search commenced, Lark shoved Officer Branson away and fled on foot. Officers Branson and Gremes pursued Lark, caught him, and a struggle ensued. Lark was finally subdued after Officer Gremes sprayed him in the face with pepper spray.

After the officers subdued Lark, they placed him under arrest. Officer Branson then conducted a search of Lark's person.

---

1. Ind.Code Ann. § 35–44–3–3(b)(1) (West Supp.2000).

2. Ind.Code Ann. § 9–24–18–5 (repealed, recodified, and reclassified as a class A infraction at IC § 9–24–19–1).

3. Ind.Code Ann. § 35–48–4–11 (West 1998).

4. IC § 35–44–3–3.

He discovered a plastic baggie containing a green, leafy substance that was later determined to be marijuana. Lark was later charged with three counts of resisting law enforcement, possession of marijuana, driving while suspended, and battery. He was convicted as set out above following a jury trial.

At trial, Lark submitted a motion to suppress based upon the argument that the initial stop and subsequent search of his person, and the seizure of the marijuana found in his pocket violated article 1, section 11 of the Indiana Constitution. The trial court denied the motion. Upon appeal, Lark asserts essentially the same argument in support of his claim that the convictions are constitutionally invalid. Specifically, Lark contends that "the police had lost the reasonable grounds to stop Lark once he had proceeded on because there was no longer a valid reason to stop his vehicle, to wit: the sole reason for them stopping him was for blocking traffic, which he had already ceased doing." Appellant's Brief at 11.

 Our standard of review in this context is well settled.

The trial court has broad discretion in ruling on the admissibility of evidence. We will reverse a trial court's ruling on the admissibility of evidence only when it has been shown that the trial court abused its discretion. A trial court's decision to deny a motion to suppress is reviewed as a matter of sufficiency. Thus, in reviewing a trial court's decision on a motion to suppress, we do not reweigh the evidence or judge the credi-

bility of witnesses, but determine if there was substantial evidence of probative value to support the trial court's ruling. Therefore, when evaluating determinations of reasonable suspicion, we accept the factual findings of the trial court unless they are clearly erroneous. However, the ultimate determination of reasonable suspicion is reviewed *de novo*.

*Williams v. State*, 745 N.E.2d 241, 244 (Ind.Ct.App.2001) (citations omitted).

 A law enforcement officer may stop a vehicle when the officer observes a minor traffic violation. *Ransom v. State*, 741 N.E.2d 419 (Ind.Ct.App.2000), *trans. denied.* Ind.Code Ann. § 35–42–2–4 (West 1998) provides: "(a) A person who recklessly, knowingly, or intentionally obstructs vehicular or pedestrian traffic commits obstruction of traffic, a Class B misdemeanor. (b) The offense described in subsection (a) is: (1) a Class A misdemeanor if the offense includes the use of a motor vehicle[.]"

 In the instant case, Officers Branson and Gremes saw Lark's car parked in the middle of the road in such a way that traffic could not pass from either direction. In fact, Lark's stopped car prevented the police car in which the officers were sitting, as well as a car coming from the opposite direction, from proceeding down the street. This action violated the statute set out above and thus constituted a minor traffic violation that would justify a traffic stop.[5] Lark contends that the stop was not proper in part because the

---

5. Even if the stop was pretextual in nature, a fact that we do not concede, such does not convert a valid traffic stop into an unconstitutional stop and search. *See, e.g., Kenner v. State*, 703 N.E.2d 1122, 1129 n. 1 (Ind.Ct. App.1999) ("A lawful stop for a bona fide traffic violation, even if pretextual, does not convert the stop into an unconstitutional

search and seizure."), *trans. denied; see also State v. Voit*, 679 N.E.2d 1360, 1363 (Ind.Ct. App.1997) (the fact that the police officer's "primary motivation in pulling [the defendant] over may have been to investigate drug activity does not convert a valid traffic stop into an unconstitutional search and seizure").

police officers did not stop his vehicle until he had driven several blocks from the scene of the infraction. We can find no authority for the proposition that police may execute a traffic stop only within a certain proximity to the scene of the violation, nor can we conceive of a rationale for creating such a rule. For purposes of the issue under consideration, it is of no significance that the stop was executed several blocks from the scene of the infraction.

■ After executing a valid traffic stop, the officers encountered the obvious odor of marijuana emanating from Lark's car as they approached the vehicle. In *Kenner v. State*, 703 N.E.2d 1122, we held that a police officer's suspicion of illegal activity that was aroused by the detection of the odor of marijuana provided a reasonable suspicion that the vehicle contained narcotics, thus permitting a search of the vehicle after the completion of the traffic stop. *See also D.K. v. State*, 736 N.E.2d 758 (Ind.Ct.App.2000). That principle applies with equal force in the instant case.

In summary, the officers were justified in stopping Lark's vehicle because they observed him commit a traffic violation. The odor of marijuana emanating from Lark's vehicle was sufficient to permit Officer Branson to form a reasonable suspicion that illegal activity had occurred or was about to occur. This was sufficient to justify the ensuing search and seizure. Accordingly, the trial court did not err in denying Lark's motion to suppress and permitting the State to introduce the evidence in question.

Judgment affirmed.

SULLIVAN, J., concurs in result with opinion.

RILEY, J., dissents with opinion.

SULLIVAN, Judge, concurring in result.

The facts, as stated in the lead opinion by Judge Friedlander, are those most favorable to the convictions. Such is not inappropriate given our standard of review with regard to a denial of a motion to suppress. *Goodner v. State*, 714 N.E.2d 638 (Ind.1999). Certain facts, however, not stated here, would permit a reasonable conclusion that the traffic stop was pretextual in nature.

It is uncontroverted that Lark's vehicle was stopped in the traveled portion of the street in order to allow William Davis, his passenger, to exit the vehicle. Lark was transporting Davis so that the latter could pick up his truck which had been parked on the street. It was necessary for the vehicle to briefly stop in the street because bumper-to-bumper parking was being temporarily permitted on both sides of the relatively narrow street during the Black Expo celebration. Ordinarily parking was permitted only on one side of the street. The location was in close proximity to a bar in front of which there were numerous persons congregated. Traffic could pass in opposite directions but only if each vehicle moved as far to the right as possible near parked vehicles. Lark's vehicle was stopped only momentarily for approximately fifteen seconds. When the police car pulled behind Lark's vehicle it was blocking an oncoming car. The police decision to make a stop and issue a warning to Lark was delayed until Lark's car was away from the congested area in front of the bar. During this entire incident up until the traffic stop itself, there was nothing sinister or suspicious in the movements and activities of Davis or Lark other than the momentary blockage of traffic.

Be that as it may, Lark's vehicle was indeed blocking traffic even if but for a moment. The fact that the officers waited

and followed Lark for four blocks before making the stop does not eliminate the fact that the Class B misdemeanor had already taken place. Accordingly, the traffic stop was not unconstitutional, even though the officers stated that they only intended to issue a warning rather than a traffic citation for the violation. That a traffic citation could have been issued is sufficient to defeat Lark's constitutional argument.

For the reasons stated, I concur in affirming the convictions.

RILEY, Judge, dissenting.

I respectfully dissent. The Anderson police officers' initial stop of Lark's vehicle was not supported by a reasonable suspicion in violation of Article I, Section 11 of the Indiana Constitution. Specifically, the evidence leading to his eventual apprehension and arrest flowed from an illegal traffic stop.

Here, the trial court denied Lark's motion to suppress on the basis that there was a reasonable articulable basis for the officer to believe that Lark had stopped his vehicle and blocked traffic, which served a legitimate basis for the officers to make an investigatory stop of his vehicle. Because the police officers only observed Lark's vehicle stop for ten to fifteen seconds and Lark was not committing a crime there was no evidence to support a reasonable belief that criminal activity was about to occur. The police officers did not have a reasonable articulable suspicion to stop Lark's vehicle, and therefore, violated Article I, Section 11 of the Indiana Constitution.

Indiana has "adopted the *Terry*[6] rationale in determining the legality of investigatory stops under Article I, Section 11 of the Indiana Constitution." *Wilson v. State*, 670 N.E.2d 27, 29 (Ind.Ct.App.1996).

The "reasonable suspicion requirement is satisfied when the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Id.*

At the suppression hearing, the arresting officers testified that at approximately 2:00 a.m., when they turned the corner onto Cedar Street in their police car, they saw: a car parked in the street in front of a nightclub; a man standing outside the car, leaning into the car, cars parked on both sides of the street; and a car traveling towards them in the opposite direction. However, the police officers further testified that they observed the car parked in the street for approximately ten or fifteen seconds. Moreover, the record reveals that the police officers did not stop Lark's vehicle until he turned from Cedar Street and had drive four blocks from the place where the police officers had observed his vehicle stopped for ten to fifteen seconds. Finally, the police officers testified that when they stopped Lark's vehicle, their intention was not to give Lark a citation for obstructing traffic, but instead, to warn Lark not to obstruct traffic. Therefore, I am not persuaded by the majority's holding that the police officers were justified in stopping Lark's vehicle because he had committed a traffic violation. In fact, Lark never received a citation for obstructing traffic. The police officers testified that their intention was to merely give Lark a warning not to obstruct traffic.

Therefore, based upon the facts of this case, I cannot agree that the police officers had a reasonable articulable basis to stop Lark's vehicle and there was no evidence to support a reasonable belief that criminal activity was about to occur.

---

6. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

I would reverse the trial court's denial of Lark's motion to suppress.