FILED

May 26 2023, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

M. Slaimon Ayoubi
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Robert M. Yoke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cody Moore,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 26, 2023

Court of Appeals Case No.
22A-CR-1979

Appeal from the
Marion Superior Court

The Honorable
William J. Nelson, Judge

The Honorable
Mark F. Renner, Magistrate

Trial Court Cause No.
49D18-2008-F6-26849

**Opinion by Senior Judge Shepard**
Judges Pyle and Weissmann concur.

**Shepard, Senior Judge.**

[1] In this interlocutory appeal, Cody Moore challenges the trial court's denial of his motion to suppress. He argues that the similarity in smell of marijuana and legal hemp is fatal to the search. Concluding that Moore's rights were not violated, we affirm.

## Facts and Procedural History

[2] In August 2020, Indianapolis Metropolitan Police Department Officer Ryan Dienhart performed a license plate check on a blue Volkswagen vehicle that was traveling in front of him. The check revealed that the license plate was both expired and registered to a different vehicle—a gray Jeep. Based on this information, Officer Dienhart stopped the car. Dienhart identified Moore as the driver of the car and immediately smelled a strong odor of marijuana. Initially, Moore refused to exit the car, but he eventually complied, and officers searched the car. Officers found five bundles of cash totaling about $5,000 in a backpack on the front passenger floorboard. Appellant's App. Vol. II, p. 24 (Aff. Prob. Cause). In another backpack in the trunk, officers found four large plastic bags of raw marijuana as well as more cash that totaled over $6,500. *Id.* at 24-25. The total weight of the recovered marijuana was approximately three and one-half pounds. *Id.* at 25.

[3] The State charged Moore with dealing in marijuana, a Level 6 felony; possession of marijuana, a Class B misdemeanor; and resisting law enforcement, a Class A misdemeanor. Moore moved to suppress the items

seized from the car, and following a hearing, the trial court denied the motion. The trial court also denied Moore's motion to reconsider.

## Issue

[4] Moore's sole contention in this appeal is that the trial court erred by denying his motion to suppress the evidence obtained pursuant to the search.

## Discussion and Decision

[5] "We review the denial of a motion to suppress similar to claims challenging the sufficiency of the evidence." *Meek v. State*, 950 N.E.2d 816, 819 (Ind. Ct. App. 2011), *trans. denied*. We do not reweigh the evidence. *State v. Jones*, 191 N.E.3d 878 (Ind. Ct. App.), *trans. denied*, 197 N.E.3d 823 (Ind. 2022). We construe conflicting evidence in the light most favorable to the trial court's ruling, and we also consider any substantial and uncontested evidence favorable to the defendant. *Id.* We will affirm the decision of the trial court if it is supported by substantial evidence of probative value. *Meek*, 950 N.E.2d 816. If a motion to suppress concerns the constitutionality of a search or seizure, it presents a legal question that we review de novo. *Marshall v. State*, 117 N.E.3d 1254 (Ind. 2019).

[6] Separately claiming violations of both the federal and state constitutions, Moore contends: (1) the purpose of the traffic stop was complete prior to the search of the car and there was no reasonable suspicion to detain him beyond the reason for the stop; and (2) the officer lacked probable cause to search the car.

## A. Fourth Amendment

Moore first argues a violation of the Fourth Amendment, which protects against unreasonable searches and seizures. The stop of a vehicle and detention of its occupants constitute a seizure within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention is brief. *Thayer v. State*, 904 N.E.2d 706 (Ind. Ct. App. 2009). If a detention exceeds its proper scope, any items seized must be excluded from evidence as fruit of the poisonous tree. *Id.* (quoting *U.S. v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999), *cert. denied*).

### 1. Reasonable Suspicion for Further Detention

Traffic violations, even minor ones, create probable cause for officers to stop a vehicle. *State v. Torres*, 159 N.E.3d 1018 (Ind. Ct. App. 2020) (quoting *State v. Quirk*, 842 N.E.2d 334 (Ind. 2006)). But once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something occurred during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity was occurring. *Thayer*, 904 N.E.2d 706 (quoting *Hill*, 195 F.3d at 264).

Although Moore concedes that his operation of a vehicle with an expired license plate justified the initial stop, he asserts the circumstances of the traffic stop did not establish reasonable suspicion that criminal activity was occurring to justify further detention. He maintains that Officer Dienhart's drug

investigation "began well after the mission and purpose of the stop was accomplished." Appellant's Br. p. 15.

[10] At the suppression hearing, Officer Dienhart testified that he made contact with Moore at the passenger window. Moore told the officer the car was a rental and that he did not have the paperwork with him. Moore then made a call, allegedly to the rental company, to obtain the paperwork. Dienhart testified that "upon initial contact and during the entirety" of his conversation with Moore, he "detected the strong odor of marijuana emanating from inside the car." Tr. Vol. 2, p. 31. The officer stated that "the odor was so strong and apparent that I just came . . . right out and ask[ed] [him] how much marijuana is inside the car." *Id.* at 32. Dienhart explained that Moore "denied any presence of or usage of marijuana whatsoever, which is an immediate red flag" and "an indicator to me that he was obviously lying." *Id.* Officer Dienhart also noticed that Moore's hands were shaking and that he appeared very nervous and pale. On cross examination, defense counsel asked when the drug investigation commenced, and Dienhart responded, "as soon as I detect the odor of marijuana." *Id.* at 45.

[11] Officer Dienhart also testified that he has had training in recognizing both raw and burnt marijuana. *Id.* at 24. He further stated that he can distinguish between the two types and that in seven and one-half years he had taken part in hundreds, if not thousands, of investigations that involved marijuana. *Id.* at 27.

[12] These facts are sufficient to establish reasonable suspicion that criminal activity was occurring. Before the traffic stop was completed, indeed as soon as it began, Officer Dienhart smelled what he believed, in his training and experience, to be the odor of marijuana. The officer was thus justified in his brief detention of Moore for further investigation into the odor coming from the car.

### 2. Probable Cause to Search the Car

[13] Moore next alleges that the officers did not have probable cause to search the car. As a general rule, the Fourth Amendment prohibits warrantless searches, but the rule is not without exceptions. *Myers v. State*, 839 N.E.2d 1146 (Ind. 2005). For instance, the automobile exception allows police to search a vehicle without obtaining a warrant if they have probable cause to believe evidence of a crime will be found there. *State v. Hobbs*, 933 N.E.2d 1281 (Ind. 2010). This exception stems from an automobile's ready mobility, in that the evidence may disappear while a warrant is being obtained, and from citizens' lower expectations of privacy in their automobiles due to government regulation. *Id.* Under this exception, the courts of this state have held that an officer's detection of the odor of marijuana from a vehicle provides probable cause to search the vehicle. *See Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013) ("the smell of burnt marijuana emanating from [a person's] car windows, to a trained officer, would provide such an officer with probable cause sufficient to justify searching at least the open interior of the car"); *Bell v. State*, 13 N.E.3d 543, 546 (Ind. Ct. App. 2014) ("like the smell of burnt marijuana, the smell of raw

marijuana on a person is sufficient to provide probable cause that the person possesses marijuana"), *trans. denied*.

[14] Pertinent to Moore's claim is that our General Assembly has amended state law to recognize the legality of some forms of cannabis containing low levels of THC.[1]  *See* Ind. Code § 15-15-13-6 (2019) (defining "hemp" as any part of the cannabis plant, including derivatives and extracts, with a delta-9-tetrahydrocannabinol concentration of not more than three-tenths of one percent (0.3%)).  And marijuana and hemp purportedly have indistinguishable odors.  *See* North Carolina State Bureau of Investigation, "Industrial Hemp/CBD Issues," available at

https://www.sog.unc.edu/sites/default/files/doc_warehouse/NC%20SBI%20-%20Issues%20with%20Hemp%20and%20CBD%20Full.pdf

[https://perma.cc/DX25-455S] (last visited May 19, 2023).

[15] Here, Moore asserts there is no distinction between the odor of legal and illegal cannabis-derived substances and argues that the mere odor of marijuana is thus no longer a sufficient basis for a warrantless search of a vehicle.  Not surprisingly, this topic has created much debate in the last few years as more and more states legalize cannabis-derived substances.  *See, e.g.*, Cynthia A.

---

[1] "Delta-9-tetrahydrocannabinol (THC) is the primary psychoactive cannabinoid extracted from the cannabis (marijuana) plant." https://www.ncbi.nlm.nih.gov/books/NBK563174/#:~:text=Go%20to%3A-,Indications,the%20cannabis%20(marijuana)%20plant [https://perma.cc/F38Z-Z368] (last visited May 19, 2023).

Sherwood et al., *Even Dogs Can't Smell the Difference: The Death of "Plain Smell" as Hemp is Legalized*, 55 Tenn. B.J. 14 (December 2019); *see generally* Brynn Holland, *The Hazy History of '420'* (updated April 20, 2022), https://www.history.com/news/the-hazy-history-of-420 [https://perma.cc/CB4K-WN2U] (last visited May 19, 2023).

[16]     Some federal courts have had recent occasion to address the argument presented by Moore, and they have rejected it. In *United States v. Vaughn*, 429 F. Supp. 3d 499 (E.D. Tenn. 2019), the court found probable cause for the issuance of a search warrant based in part upon the officers smelling the odor of marijuana when the defendants' apartment door was opened. The defendants argued the odor the officers detected could have been hemp, but the court applied the "fair probability" test and found probable cause. The court held:

> Probable cause for a search warrant requires "a fair probability, given the totality of the circumstances, that contraband or evidence will be found in a particular place." Absolute certainty is not required. As a result, Defendants' contention that the smell could have been hemp does not change the fact that it also could be, and was, marijuana. The officers' detection of a marijuana odor meant there was a fair probability that marijuana would be found within the apartment, which is sufficient for probable cause.

*Id.* at 510 (internal citations omitted).

[17]     More recently in *United States v. Garth*, No. 3:20-CR-43-TAV-HBG, 2021 WL 8442271 (E.D. Tenn. July 6, 2021), report and recommendation adopted in part by No. 3:20-CR-43-KAC-JEM, 2022 WL 1084740 (E.D. Tenn. Apr. 11, 2022),

the District Court for the Eastern District of Tennessee held that an officer had probable cause to search a vehicle for drugs based upon the odor of raw marijuana coming from the vehicle. The defendants argued that the odor of marijuana did not provide probable cause to search the car because the odor of marijuana cannot be distinguished from the odor of lawful substances, such as hemp. Noting the officer testified he is familiar with the odor of marijuana, the court applied the "fair probability" test set forth in *Vaughn* and held that the officer's detection of the odor at the window of the vehicle established a fair probability that the car contained marijuana. *Id.* at *13. *See also U.S. v. Nava*, No. 2:22-CR-20002-PKH-1, 2022 WL 3593724 (W.D. Ark. Aug. 1, 2022) (where defendant contended that odor of marijuana alone no longer provides probable cause to search vehicle because medical marijuana and industrial hemp are legal in Arkansas, court disagreed and relied on Arkansas state caselaw that, post-legalization, continued to hold that odor of marijuana justifies vehicular search), report and recommendation adopted by No. 2:22-CR-20002, 2022 WL 3589493 (W.D. Ark. Aug. 22, 2022).

[18] Similar rulings occurred in *United States v. Holt*, No. 3:21-CR-80 (MPS), 2021 WL 5281366 (D. Conn. Nov. 12, 2021) (discussing that, although there was possibility odor may have emanated from hemp or non-criminally possessed marijuana, it did not undermine reasonableness of officer's suspicion that odor was criminally-possessed marijuana in affirming denial of motion to suppress and concluding police had probable cause to search vehicle based upon odor and defendant's statement of possessing "a blunt") and *United States v. Brooks*,

No. 319CR00211FDWDCK, 2021 WL 1668048 (W.D.N.C. Apr. 28, 2021) (defendant cited North Carolina State Bureau of Investigation report seeming to suggest that marijuana and hemp look and smell almost identical and argued that because substances found in vehicle were not tested, evidence must be suppressed; court denied suppression, stating that, even assuming hemp and marijuana smell identical, presence of hemp does not render unreasonable all police probable cause searches based on odor because, regardless of ever-changing state marijuana legal landscape, marijuana remains illegal under federal law and precedent of odor of marijuana giving law enforcement probable cause to search has not been overturned).

[19]   In accord with these holdings were: *United States v. Boggess*, 444 F. Supp. 3d 730 (S.D.W. Va. 2020) (where defendant asserted that, due to legalization of hemp, precedent of odor of marijuana providing probable cause to search should be revisited because marijuana and hemp cannot be distinguished by smell, court recognized both nationwide movement to legalize or decriminalize marijuana and fact that possession of marijuana remains criminal offense under West Virginia state law and federal law and held there was probable cause to search where officer's belief that there was illegal contraband in defendant's vehicle was reasonable based on odor of marijuana emanating from vehicle) and *United States v. Bignon*, No. 18-CR-783 (JMF), 2019 WL 643177 (S.D.N.Y. Feb. 15, 2019) (finding officer had probable cause even if he reasonably, but mistakenly, believed he smelled marijuana given the close similarity of marijuana and hemp), *aff'd by* No. 19-2050, 813 F. App'x 34 (2nd Cir. N.Y. May 19, 2020).

[20] Accordingly, we apply the test of "fair probability" to the facts before us. Although it was equally possible that the strong odor emanating from the vehicle and detected by Officer Dienhart was hemp as it was marijuana, these circumstances created a fair probability—that is, "a substantial chance"—that the vehicle contained contraband. *Eaton v. State*, 889 N.E.2d 297, 300 (Ind. 2008). We thus conclude that Officer Dienhart's detection of the odor of marijuana immediately upon his arrival at the open window of the car driven by Moore provided probable cause for him to search the car.

## B. Indiana Constitution

[21] Article 1, section 11 of the Indiana Constitution protects citizens from unreasonable searches and seizures, and, although its text mirrors the Fourth Amendment, we interpret it separately and independently. *Robinson v. State*, 5 N.E.3d 362 (Ind. 2014). When a section 11 claim is raised, the State must show the police conduct was reasonable under the totality of the circumstances. *Farris v. State*, 144 N.E.3d 814 (Ind. Ct. App. 2020) (quoting *Robinson*, 5 N.E.3d at 368), *trans. denied*. A determination of the reasonableness of the conduct turns on a balance of three factors: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id.*

[22] Here, as he has acknowledged, Moore was in clear violation of the law by operating a vehicle with an expired license plate at the time Officer Dienhart

stopped him. Immediately upon approaching the car to inquire about the issues with the license plate, the officer smelled a very strong odor of marijuana. The degree of suspicion of criminal activity increased exponentially upon this observation, which justified Dienhart's continued detention of Moore, as we discussed above.

[23] The heart of this case, though, is whether the odor also justified the subsequent search of the car. We note that since our state's legalization of some cannabis-derived substances, we have addressed issues concerning the similarity in the odors of marijuana and hemp. *See Alexander-Woods v. State*, 163 N.E.3d 902 (Ind. Ct. App.) (where, following trial on charges arising from traffic stop and vehicle search based on odor of marijuana, defendant challenged probable cause for search on ground that State failed to prove officer was qualified to distinguish between odors of illegal marijuana and legal hemp, Court's review of issue was precluded by waiver for failure to assert argument in trial court), *trans. denied*, 168 N.E.3d 737 (Ind. 2021), *and disapproved of by Bunnell v. State*, 172 N.E.3d 1231 (Ind. 2021); *Bunnell*, 172 N.E.3d 1231 (determining issue of first impression and holding that officer who affirms he or she detects odor of raw marijuana based on training and experience may establish probable cause without further details on his or her qualifications to recognize odor; disapproving *Alexander-Woods*, 163 N.E.3d 902 because its holding suggested that officer's general statement of training and experience may not suffice for probable cause determination); *Fedij v. State*, 186 N.E.3d 696 (Ind. Ct. App. 2022) (reversing defendant's conviction for possession of marijuana due to

State's failure to prove seized substance was illegal marijuana, as opposed to legal hemp, where officer testified at trial that she could not distinguish between hemp and marijuana absent testing for concentration of THC and that she was trained on the smell of burnt marijuana and not burnt hemp or any differences that may exist between the two and analyst identified presence but not percent concentration of THC in substance); *Toledo Rojo v. State*, 202 N.E.3d 1085 (Ind. Ct. App.) (reversing a conviction based on insufficient evidence where an officer testified that he knew the substance seized was marijuana due to markers regarding sight and smell and holding this evidence insufficient to establish that the substance was illegal marijuana with concentration of THC of 0.3% or more as required to convict for possession of marijuana), *trans. denied*, 199 N.E.3d 787 (Ind. 2022).

[24] Still, this Court has not tackled the precise argument Moore presents here. The argument is this: given the concept that illegal marijuana and legal hemp cannot be distinguished by their smell due to the similarity of their odors, it can no longer be said that marijuana has a "distinct smell" that indicates criminal activity. We disagree.

[25] Marijuana is not the only substance whose legality cannot be detected by human senses alone. For instance, innocuous substances such as talcum powder, flour, and sugar have a white powdery appearance similar to cocaine. But that does not mean that an untested white powder can never indicate criminal activity. *See, e.g.*, *Lamagna v. State*, 776 N.E.2d 955 (Ind. Ct. App. 2002) (ruling that police had probable cause to arrest defendant based solely on

observations of his possession, transfer, and abandonment of packets of white powder). Similarly, an officer's discovery of unidentified pills may indicate criminal activity, although some pills are not contraband because they either are not controlled substances or because the person possessing them has a valid prescription. *See Strangeway v. State*, 720 N.E.2d 724 (Ind. Ct. App. 1999) (ruling that police officer had probable cause to arrest driver after passenger exited car and officer saw on seat of vehicle a cellophane wrapper containing white pills that he suspected were controlled substances); Ind. Code § 35-48-4-6(a) (2014) (defining offense of possession of narcotic as requiring possession of schedule I or II narcotic by a person "without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice").

[26] It therefore is not convincing that the marijuana odor *could be* caused by legal hemp. Although the legal landscape for cannabis-derived substances is ever-changing, one thing remains true: some types of marijuana possession remain illegal in Indiana. It follows then that the odor of marijuana reasonably may indicate criminal activity. Therefore, in the consideration of the constitutionality of a search based on the odor of marijuana, as the law stands now it is of no moment that legal hemp smells similar to illegal marijuana because law enforcement's conduct must be reasonable under the circumstances and such reasonableness does not require conclusive proof that a defendant committed a crime. Thus, in this case the strong odor of marijuana detected by Officer Dienhart as soon as he approached the car driven by Moore established a high degree of suspicion of criminal activity.

With respect to the remaining factors, the degree of police intrusion on Moore's ordinary activities was slight as Dienhart initially stopped Moore due to the car's license plate being both expired and registered to a different vehicle. And, Officer Dienhart's conduct in making the stop was appropriate to the enforcement of traffic laws, and his subsequent search of the car Moore was driving was consistent with law enforcement's responsibility to deter crime, to intercept criminal activity, and to apprehend its perpetrators. *See State v. Washington*, 898 N.E.2d 1200 (Ind. 2008). We conclude the warrantless search was reasonable in light of the totality of the circumstances and therefore did not violate Moore's rights under article 1, section 11.

## Conclusion

We conclude the trial court did not abuse its discretion in denying Moore's motion to suppress the evidence seized as a result of the stop.

Affirmed.

Pyle, J., and Weissmann, J., concur.